W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL 11, INTERNATIONAL HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION OF AMERICA, Defendant.

Civ. A. No. 60-676.

United States District Court
W. D. Pennsylvania.

Oct. 4, 1962.

———◆———

Charles Donnenfeld, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

James Craighead Kuhn, Jr., Pittsburgh, Pa., for defendant.

Robert J. Connerton, International Hod Carriers' Building & Common Laborers' Union of America, AFL–CIO, as amicus curiae.

SORG, District Judge.

This is an action brought by the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. 481 et seq., to set aside an election of officers held by defendant, an unincorporated labor union, on June 17, 1960, or, in the alternative, to exercise its general equity power to enjoin the Local from conducting an election in violation of the sections of the Act set forth in its complaint.   Section 402(c) of the Act, 29 U.S.C.A. § 482(c) reads as follows:

"(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

* * * (2) that the violation of section 481 of this title may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization."

The parties, after having stipulated the applicable facts and exhibits, have moved for summary judgment.   Defendant's parent union, International Hod Carriers' Building and Common Laborers' Union of America, AFL–CIO, has participated in the arguments and filed briefs as amicus curiae.

Defendant, hereinafter called the Local, is subject, in its organization and internal procedures, to the provisions of the constitution of its parent body and to the uniform local constitution and to lawful orders, decisions, interpretations, rules and regulations promulgated in pursuance thereof by the General President and the General Executive Board of

the International Union. These constitutions set forth procedures for the nomination and election of officers which are not inconsistent with the provisions of the Act.

All candidates and election officials were duly nominated by the Local and the results of the election held on June 17, 1960, now sought to be set aside, were as follows:

| | | |
|---|---|---|
| President | William Stitts | 174 |
| | B. U. Brock | 250 |
| Vice-President: | Peter Clark | 157 |
| | Leroy Lewis | 255 |
| Recording Secretary: | Curtis Upsher | 265 |
| | Samuel Guyton | 147 |
| Financial Secretary: | Ellis McGruder | 145 |
| | Willie Stevens | 291 |
| Treasurer: | Junie Wayts | 146 |
| | Joseph Caldwell | 295 |
| Sergeant-at-Arms: (3) | Jessie Winston | 261 |
| | Mose Ewing | 142 |
| | William Peterson | 164 |
| | William Long | 243 |
| | Robert Hackley | 236 |
| | Mose Charles | 120 |
| Trustees: (3) | Carey Reed | 259 |
| | Percy "Skippy" Howard | 253 |
| | Booker T. Charles | 184 |
| | Henry I. Taylor | 219 |
| | Dewey Adams | 135 |
| | William Beech | 96 |
| Executive Board: (2) | Rufus Davis | 43 |
| | William Hill | 149 |
| | Samuel Farrer | 238 |
| | John Pryor | 235 |
| Labor District Council: | Samuel Lawler | 177 |
| | Dudley Phillips | 221 |
| Central Labor Union: | Ernest Dow | 191 |
| | Evans Smalley | 162 |
| Business Agent: | Jack Williams | 160 |
| | James E. Threatt | 285 |

On June 21, 1960, by letter addressed to the International President, defeated candidates and other members of the Local protested the election, stating the basis therefor as follows:

"1. The financial Secretary did not stamp or mark the dues books as stated in Article 10, Section 1 of the local's Constitution. Thereby not protecting against a member voting several times. (Our records show that this did happen) The election committee went along with this practice.

"2. The election committee refused to grant a request to let watch-

ers from both sides to go into the booth with a member who needed assistance. Only one watcher was permitted to assist when requested, thereby if a member wanted to vote a split ticket, the watcher not permitted in the booth could not protect the vote for his canidates. There were forty-five such cases which could have been the margin of victory for some of the canidates.

"3. Our records show that there were twenty-four so called members that were permitted to vote without presenting any identification Whatever, in each case the financial secretary was asked to sign his name to verify that they were members in good standing, this he refused to do, but the election committee went along."

A hearing on the protest was held before a panel of the General Executive Board of the International Union on July 9, 1960 and evidence was received from both the complainants and the Local in connection with each of the charges stated in the protest. At this hearing, in response to an inquiry from a member of the panel as to how it could be determined "in what way" a particular member voted or "for whom he voted", Jack Williams, one of the principal complainants, stated as follows:

"We don't know who he voted for. As far as I knew, it was a secret ballot. The system which we use, we can tell whether he voted on his book, whether he voted on his card or no book. We don't know who he votes for."

By letter dated July 29, 1960, to "Mr. Jack Williams, et al." the General Secretary-Treasurer stated as follows:

"This is to officially notify you of the following action of the General Executive Board, taken at its meeting held in Washington, D. C., July 18–26, 1960:

" 'PROTEST AND APPEAL OF JACK WILLIAMS, ET AL., LOCAL UNION 11, PITTSBURGH, PENN-SYLVANIA, DATED JUNE 21, 1960

" 'Jack Williams, et al., members of Local Union 11, Pittsburgh, Pennsylvania, protest and appeal from the election of officers held in said Local Union on June 17, 1960.

" 'The Hearings Panel in this matter found, and the record discloses, that every member of the Local Union and every candidate for office in this election, was accorded all of their rights under the law and further, that there is no evidence that the election was not conducted in accordance with the requirements and provisions of the constitution.

" 'Accordingly, after due deliberation, it is

" 'VOTED: That the recommendation of the Panel be and the same hereby is approved and that the appeal and protest be and the same hereby is denied'."

On August 22, 1960, Williams and another defeated candidate, McGruder, sent the following letter to the Secretary of Labor, enclosing therewith a copy of the above letter of protest to the International Union:

"We the undersigned, are appealing for your intervention under the Landrum-Griffin Bill, Pertaining to union elections. In the recent election of our union, Local Union No. 11, of the international Hod Carriers, Building and Common Laborers union of America. A.F. of L.–C.I.O., Held on June 17, 1960

"The irregularies in the voting procedures were as such that we had no alternate, but to appeal to our International Union, for settling of this matter.

"Enclosed is a copy of the letter which was sent to the International headquarters, stating the irregularies which took place. On July 9, 1960, in the Commordore Hotel, in New York City, we were granted a hearing on these charges. In our opinion, from the facts presented

at said hearing, we feel that we should have been awarded a new election.

"Being the International Union denied our protest and having exhausted all our internal remedies as per Constitution, we have no other alternative but to seek your intervention into this matter".

The Secretary of Labor conducted an investigation and filed his complaint in this action on October 21, 1960. However, he did not notify the Local or its International Union of the results of his investigation nor of his intentions to institute an action. His complaint alleges the following violations of the Act:

"VI. Defendant failed to elect its officers by secret ballot, in violation of Section 401(b) of the Act, 29 U.S.C.A. 481(b).[1]

"VII. Defendant failed to conduct the election in accordance with its constitution and by-laws, in violation of Section 401(e) of the Act, 29 U.S.C.A. 481(e)[2], in that:

"(a) its officers were not chosen in a secret manner as provided by Article 10, Section 2 of its constitution[3] and Section X of its by-laws.

"(b) defendant's Secretary did not stamp or mark the dues book of each member who voted as required by Article 10, Section 3 of its constitution.[4]

"(c) defendant permitted transfer members to vote who had not been members of defendant for three months, contrary to the provisions of Article 16, Section 11 of its constitution.[5]

"VIII. Defendant failed to provide adequate safeguards to insure

---

1. 29 U.S.C.A. § 481(b): "Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing."
   29 U.S.C.A. § 402(k): " 'Secret ballot' means the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed."

2. 29 U.S.C.A. § 481(e): "* * * The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter".

3. Article 10, Section 2: "Elections shall be held * * * by and in a secret manner commonly known as the Australian System."

4. Article 10, Section 3: "On the day that nominations are held, the Local shall elect or appoint three (3) judges, who shall have the same qualifications as candidates for office but none of whom shall be a candidate for any office. It shall be the duty of this committee to determine whether those nominated are eligible to the office for which they have been nominated; if the committee finds any of them disqualified it shall immediately report the same to the Local at the same meeting, and the Local may then place in nomination other person or persons for such office as the nominee has been disqualified.
   "It shall be the duty of the election committee to prepare the ballot, placing the names therein in the order in which they were nominated for their respective offices. The ballots so prepared shall be turned over by it to the Financial Secretary, who shall on election day under the supervision of the election committee deliver one ballot to every member in good standing for him to cast his vote. The Secretary shall stamp or mark the due book of each member as he gives him a ballot to show that he has voted. The conduct of the election and the counting of ballots shall be under the supervision of the election committee, except that candidates for salaried offices may each designate one member in good standing to act as a watcher while the voting is going on and while the votes are being counted."

5. Article 16, Section 11: "A member shall, upon transferring as aforesaid, become a member of the Local Union to which he has transferred and entitled to all the rights and privileges of members except that he shall not have the right to vote until he has been a member thereof for three months * * *"

a fair election, in violation of Section 401(c) of the Act, 29 U.S.C.A. 481(c) [6] in that:

"(a) it failed to draw up a list of eligible voters, but permitted the incumbent Financial Secretary and candidate for reelection to determine at the election which members were qualified to vote.

"(b) it permitted the incumbent Financial Secretary to have access to numerous dues books of members who paid their dues by mail."

The Local denies the violations charged in the complaint and contends that, with respect to the matters alleged therein, the remedies available under the union's constitution have not been exhausted as required by Section 402 of the Act, 29 U.S.C.A. § 482, that the complaint is therefore premature and that the court is without jurisdiction to consider it. The court has already ruled on this contention in connection with a prior motion to dismiss and will therefore proceed to consider the merits of the case.

In connection with the allegations which charge a violation concerning the secrecy of the ballot—paragraphs VI and VII(a) of the complaint—, it appears that the ballots used in the election were imprinted with numbers serially from "1" to "1000" and ballots numbered from 1 through 478 were actually cast. The ballots were issued to voters in numerical order, and all of the cast ballots tallied after the election bore serial numbers, except for 21 from which the numbers had been removed. The numbers were printed along the upper right hand edge of the ballot, but not on a perforated or otherwise separable part of the ballot. The ballots were distributed under the supervision of the Judges of Election. Watchers for the opposing candidates were present throughout the election. If a member produced satisfactory identification, and the records in the possession of the Financial Secretary indicated that the member's dues were paid, the member was permitted to vote. The Financial Secretary stamped the membership dues ledger as each member was handed a ballot.

While it must be conceded that the use of numbered ballots and the marking of the dues ledger to indicate the members to whom they were distributed was a practice that could lend itself to possible abuses which might lead to the identification of a voter with the choice expressed by him, there is nothing in the record to indicate that any of the officials responsible for the conduct of the election availed themselves of such opportunity, or that they identified any numbered ballot with any particular voter.

As each voter received his numbered ballot, his identity, by name or dues book number, was recorded in the same numerical order on a written list kept by a "watcher" for the candidates opposing the incumbent officers. The identity of the voters as recorded by the watcher corresponded with the serial number on the ballots issued to the voters. Thus, the secrecy of the ballots might have been invaded by co-ordinating this list with the ballots cast, and if the list were kept by the officials in charge of the election the ballots would not have been secret in that the person expressing a choice could have been identified with the choice expressed. But the ballots have at all times remained in the custody and possession of the Local's Financial Secretary. The list of voters was given by the watchers for the defeated candidates to Jack Williams, and was given by him to the International's panel which heard the protest on July 9, 1960. The list never came into possession of the Local or any of its officers and has since July 9, 1960 been in the possession of the General Counsel for the International. So far as the conduct of the election was concerned the votes of the members were,

---

6. 29 U.S.C.A. § 481(c): " * * * Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."

in fact, secret. Nor is there any evidence that the members thought their votes could be detected. Indeed, the principal complainant specifically stated: "We don't know who he (the member) voted for. As far as I knew it was a secret ballot. * * * We don't know who he votes for". In addition, although 26 members signed the protest to the International not one union member complained that any voter's choice was influenced.

Likewise, with reference to the remaining allegations of the complaint, paragraphs VII(b) and VIII, it appears that no separate list of eligible voters was prepared, that the financial secretary of the Local had access to dues books of a number of members who paid their dues by mail and that certain members were permitted to vote without presenting their dues books for stamping. These, too, were irregularities which presented the opportunity to permit what the cited provisions of the Act and the Union constitution were designed to prevent—namely, more than one vote by a single member and voting by unauthorized persons. But the financial secretary did stamp the dues ledger, which was available at all times to any candidate, as each member voted, and determination of eligibility to vote was made in the presence of the financial secretary, the judges of election and the watchers by requiring proof of identity and by reference to the Local's financial records. Moreover, the Secretary of Labor stipulates that no member voted twice and that no dues book was used by an unauthorized person. In addition, although both the record of eligible members and the list of those voting were made available to the Secretary, there is no evidence that any unauthorized person voted in the election, with the exception of three members whose transfers to the Local were too recent to make

them eligible to vote under the union constitution. (The smallest margin between a defeated candidate and his opponent was 29 votes.)

The Secretary contends that the casting of numbered ballots created possibilities of voter identification, and thus ran afoul of the requirement that the ballots be such that a voter's identity "*cannot*" be linked with his cast ballot. He advances, as evidence of this, that a "watcher" for the defeated candidates kept a list which made such voter identification possible. This court agrees that if, in addition to the use of numbered ballots a further device, such as the one employed by the "watcher" for the complainants in this case, had been used by those responsible for the conduct of the election or against whom complaint is made the ballots would not have been, in fact, secret, and the possibility of voter identification in such case would vitiate the election. There is a total lack of evidence, however, to support an inference that this did take place, or that voter identity with any ballot cast could be determined by anyone acting on behalf of the Local or the prevailing candidates.

Although the evidence discloses certain variances from literal compliance with the terms of the Act sought to be applied and the procedures followed by the Local in the election held June 17, 1960, might well be improved in the interest of better insuring a fair election and further safeguarding the secrecy of the ballot, this court cannot find by a preponderance of the evidence any violation of the Act which may have affected the outcome of the election, nor is there justifiable cause for the granting of injunctive relief, as requested.

Defendant's motion for summary judgment will be granted and plaintiff's motion for summary judgment will be denied.