Harry J. CONNOR, on behalf of himself
and all others similarly situated,
Plaintiffs,

v.

HIGHWAY TRUCK DRIVERS AND
HELPERS, LOCAL 107, affiliated International Brotherhood of Teamsters,

and

Louis J. Bottone et al.

Civ. A. No. 73–2820.

United States District Court,
E. D. Pennsylvania.

July 25, 1974.

Stephen A. Sheller, Michael F. Kraemer, Astor & Weiss, Philadelphia, Pa., for plaintiffs.

Howard J. Casper, John B. Day, Casper & Muller, P. C., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

This action arises under Title I of the Labor-Management Reporting And Disclosure Act (Act), 29 U.S.C.A. 401 et seq. Plaintiff seeks relief for himself and the class he seeks to represent for violation of the balloting procedures for dues increases under the Act. Presently before the Court is the defendants' motion to dismiss both the complaint of the plaintiff and the class action aspects of the complaint, and plaintiff's motion for class action certification. We deny the motion to dismiss and grant, in part, the motion to certify as a class action.

### The Individual Plaintiff

The plaintiff, Harry J. Connor, is a member of Highway Truck Drivers and Helpers Local 107 (Local 107) and is suing Local 107, its officers and others. Since there is a motion to dismiss his claim under F.R.Civ.P. 12(b)(6), the allegations of plaintiff's complaint are taken as true for purposes of this motion.

On or before Friday, January 19, 1973, the plaintiff received a postcard advising him that a regular monthly meeting of Local 107 would take place on Sunday, January 21, 1973. The postcard gave notice through the person of Louis J. Bottone on behalf of Local 107's Executive Board that consideration of a dues increase would be discussed at the meeting. The meeting was held as scheduled and at the meeting defendant Bottone presided over a vote of the members present as to whether membership dues would be increased. The vote was not taken by secret ballot, but rather, was a non-secret voice vote. By letter dated February 2, 1973, from defendant Bottone, plaintiff received notice that, at the regular monthly membership meeting held on January 21,

1973, the membership unanimously passed a dues increase of two (2) dollars per month, from eight (8) to ten (10) dollars per month, effective March 1, 1973.

Plaintiff claims that the dues increase violates the Labor-Management Reporting and Disclosure Act and the Local 107's by-laws which both provide for reasonable notice of the fact that a dues increase is to be voted on and that the vote be done by secret ballot.[1]

Plaintiff sought redress for a period in excess of four months through internal union remedies and has been denied relief. Immediately after receipt of the letter of February 2nd, plaintiff advised the individual defendants that the dues increase was unlawful and demanded that it not be put into effect; however, they refused to rescind the increase. Plaintiff lodged a complaint against the Executive Board of Local 107 and on August 16, 1973, a hearing was held before the Executive Board of the Teamsters Joint Council No. 53. The Board refused to sustain plaintiff's claim and did not order the increase rescinded.

Plaintiff filed the instant complaint on December 12, 1973, requesting that the Court declare the dues increase illegal; that an injunction issue against the collection of dues in excess of eight (8) dollars per month; that defendants reimburse plaintiff and other members of the class for excess dues payments with interest; that attorneys fees be awarded; and that any other appropriate relief be granted.[2]

The defendants have moved to dismiss plaintiff's complaint for failure to state a claim which would entitle the individual plaintiff to any of the equitable relief prayed for on the grounds that the plaintiff is guilty of such laches that equitable relief would be precluded; that plaintiff is estopped because he did not allege that he attended the meeting or that he would have voted against the increase; and finally that plaintiff did not allege that the vote would have had a different result had the vote been by secret ballot.

Primarily, defendants rely upon laches. They note that this suit was filed approximately eleven (11) months after the vote itself was taken; and that, in comparison with Title IV of the Act where only the Secretary of Labor can institute suit, under Title I "the allegedly aggrieved union member has direct, virtually immediate recourse to a federal court to obtain an adjudication of his claim and an injunction if his complaint has merit." Calhoon v. Harvey, 379 U. S. 134, 141, 85 S.Ct. 292, 297, 13 L.Ed.2d 190 (1964) (Stewart, J., concurring). That characterization, though quite accurate in the context of a comparison of the remedial provisions of Titles I and IV under the Act, is of rather limited usefulness in this context where we are concerned with the alacrity with which a union member has brought suit to enforce his Title I rights. Section 101(a)(4), 29 U.S.C.A. 411(a)(4)[3] specifically provides that a union member

---

1. Although the plaintiff has not specified that section of the Act which he claims was violated, we assume, as do the defendants, that plaintiff refers to Section 101(a)(3) of the Act, 29 U.S.C.A. 411(a)(3), which provides, in pertinent part, as follows:

 "*Dues, initiation fees, and assessments.*— Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 ·shall not be increased, and no general or special assessment shall be levied upon such members, except—

 (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot . . . . "

2. Jurisdiction of this Court is based upon section 102 of the Act, 29 U.S.C.A. 412, which provides: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

3. 29 U.S.C.A. 411(a)
 (4) Protection of the right to sue.—No labor organization shall limit the right of any

may be required to exhaust reasonable hearing procedures but with a four-month lapse of time maximum. In this case, the plaintiff has quite specifically alleged he brought his complaint to the attention of Local 107 immediately after notification of the dues increase and continued to seek relief internally for approximately four months and that he was obliged to do so. There is then less than a five month lapse of time between the exhaustion of internal union remedies and the institution of this suit.

In support of their claim that under these circumstances, the plaintiff's claim should be barred by laches, defendants rely upon Ford v. Metropolitan District Council of Philadelphia, 323 F.Supp. 1136 (E.D.Pa.1970) and Brooks v. Local No. 30, United Slate, Tile, etc., 187 F. Supp. 365 (E.D.Pa.1960). Both of these cases involved attempts to enjoin a dues increase alleged to be violative of Title I of the LRDA and *Ford,* in addition involved a request for damages. The alleged violations in both cases focused on the misleading nature of the ballot. In both cases, there had been adequate notice and a secret ballot. The courts in both cases held that there had been no violation of Title I but both courts, in dicta, also referred to laches. The actual lapse of time, correctly measured, in each case was, similar to the instant case, four to five months. This delay figured prominently, but not exclusively, in the statements by both courts that the cases could have been decided on the basis of laches. Notwithstanding the fact that both cases are dicta on this issue, they are also clearly materially distinguishable from the present action.

■ Laches consists of two elements; first, inexcusable delay in the institution of suit; and second, prejudice resulting to the defendant as a result of such delay. Delay, in and of itself, may give rise to a presumption of laches such that a plaintiff may have to plead and prove the excusability of the delay and/or the lack of prejudice to the defendant. If the plaintiff has delayed for a time greater than the applicable statute of limitations, then plaintiff must prove his delay was excusable and not prejudicial to the defendant. Otherwise, the defendant must bear the burden of proof on laches. In this case, plaintiff instituted this action within one year of the alleged violation and spent four months thereof immediately after the violation exhausting internal union remedies. Defendant has not suggested what Pennsylvania statute of limitations should be applied for the limited purpose set out above nor how the exhaustion requirement under Title I should be related thereto. Defendants have not cited any Pennsylvania statute of limitations, and we do not know of any, that is so short that plaintiff's pleadings must address the laches issue. Gruca v. United States Steel Corporation, 495 F.2d 1252 (3d Cir., 1974); Burke v. Gateway Clipper, Inc., 441 F.2d 946, 949–950 (3d Cir. 1971); Carmalt v. General Motors Acceptance Corp., 302 F.2d 589, 591 (3d Cir. 1962); Kane v. Union of Soviet Socialist Republics, 189 F.2d 303, 305 (3d Cir. 1951) (en banc), cert. den. 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676 (1952).

■ Essentially, we deny defendants' motion based upon laches at this time because we do not believe that it is appropriate in this case to sustain the defense of laches in the present procedural posture. Since defendants have brought this motion under F.R.Civ.P. 12(b)(6)

member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: . . . . . "

we still do not even have an answer to the complaint. Although it may be possible to make a laches determination on the basis of a 12(b)(6) motion in some cases, see e. g., Coughlin v. Ryder, 260 F.Supp. 256, 260 (E.D.Pa.1966), such is not the case here.

The present record only reveals the length of delay which is not long enough to place the burden upon the plaintiff. The defendants seem to rely upon the lapse of time, per se, but this, in itself, is not adequate for a finding of laches. Moreover, we are unable to speculate as to what prejudice, if any, the defendants have suffered from the delay. A more complete record may support the defendants' position but, at this time, we must deny their motion to dismiss. In addition, if defendants wish to pursue this defense there are a number of issues they should address. First, the appropriate statute of limitations under state law should be identified for use as a guide in determining laches. Second, there is the question of whether dues reimbursement is a legal or equitable remedy and, if legal, whether laches is applicable at all.

The defendants' position that a member of an association cannot ask a court for equitable relief when he failed to make a timely request of the union officers at the meeting that a secret ballot be taken overlooks the fact that the plaintiff has alleged that he received no notice of a vote on a dues increase. The defendant relies for this point on Brooks v. Local No. 30, United Slate, Tile, etc., *supra,* but the lack of notice here renders that case inapposite.

Finally, the defendants note that the plaintiff does not plead that the absence of a secret ballot would have changed the result and, in fact, pleads that the vote taken was unanimous. Defendant relies on Wirtz v. Local 11, Internat'l Hod Carriers' Bldg. & Com. Lab. U., 211 F.Supp. 408 (W.D.Pa.1962) which on analysis does not support defendants' position. Wirtz involved an action by the Secretary of Labor under Title IV of Act to set aside an election of union officers under 29 U.S.C.A. 482(c) which provides that if the court finds that a violation of 29 U.S.C.A. 481, governing union election procedures, may have affected the outcome of the election, the court shall declare the election void. As a threshold matter, it is obvious that the statutory mandate alone is quite different than that contained in Title I; in addition however, the case is further distinguishable. The court did make the statement relied upon by defendants that although the evidence established certain variances from the literal compliance with the terms of the Act, the court did not find a violation of the Act which may have affected the outcome of the election. The action involved allegations of violation of the secret ballot provision and illegal votes. The court found that the voting procedure might have allowed invasion of the secrecy of the ballot by coordinating a list with the ballots cast, but there was no evidence that this was done so any ballot was identified, and perhaps more importantly, there was no evidence that the members thought their votes could be detected. The court found evidence of only three (3) unauthorized votes which was too small a number to make any difference because of the victory margins. It was in this context, so materially different from that of this case as not to require comment, that the court made the statement relied on by defendant.

In the context of the alleged violations of this case, we agree with the statement of the court in White v. King, 319 F.Supp. 122, 124–125 (E.D.La.1970) in response to the same argument made here in a very similar action.

"We are unable to perceive the basis of defendants' argument. Section 411(a)(3)(A) requires in clear and unmistakable language a secret ballot for any dues increase. A requirement of prejudice is nowhere mentioned. This section is part of a subchapter to the LMRDA entitled 'Bill of Rights of Members of Labor Organizations.' As a remedial statute, it is not to be read narrowly so as to derogate any of the

rights granted by Congress to American working men. Where no requirement of prejudice exists, none should be read in. The requirement of a secret ballot is an absolute protection for the working man, and any vote that dispenses with it is invalid as repugnant to the statute."

Defendants' argument that the plaintiff must allege that the result of the ballot was, in fact, affected by its nonsecret nature and would have been otherwise had a secret ballot been held is directly contrary to the congressional judgment represented by the secrecy provision. We believe that Congress envisaged unanimity in the case of nonsecret ballots but also judged that such unanimity was suspect. Congress required that balloting take place absent even the subtle pressure that nonsecrecy, in itself, may entail. Once a nonsecret ballot has been held, if plaintiff must allege and prove the prejudicial impact of nonsecrecy, the very problem of even subtle pressure, which Congress sought to eliminate, would necessarily pervade such proceedings and consequently congressional judgment would be frustrated. The Third Circuit has recognized that a single union member may be the catalyst of challenge to union action in which other union members acquiesce. In Gartner v. Soloner, 384 F.2d 348, 355 (3d Cir. 1967), cert. den. 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968), the court, in holding that district courts have the power to award attorneys' fees to successful litigants under section 102 in a case where a union member has been fined and suspended by the union for protesting a denial of voting rights to union members, said:

"[THE] phrase [appropriate relief in section 102] . . . [makes] available . . . necessary material assistance to a single unionist fighting his lonely battle for justice. . . . ."

For the reasons set out above, defendants' motion to dismiss the individual's complaint is denied.

## Class Action

Plaintiffs have moved for class action certification and defendant has moved to dismiss the complaint as a class action and for a more definite statement with respect to class action allegations.

 The defendants suggest that a class action cannot be maintained for violation of section 101 rights, citing Mamula v. United Steelworkers of America, 304 F.2d 108 (3d Cir. 1962), cert. den. 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962); Grove v. Glass Bottle Blowers Ass'n of U. S. & Can., 329 F.Supp. 337 (W.D.Pa.1971); Broomer v. Shultz, 239 F.Supp. 699 (E.D.Pa.1965). However, these cases do not stand for such a broad proposition. These cases stand for the proposition that an individual does not have standing to litigate the rights of another. In order to have standing to sue as a class representative, plaintiff must be part of that class, i. e., he must possess the same interest and suffer the same injury shared by all members of the class he represents. Schlesinger v. Reservists Committee to Stop the War, —— U.S. ——, 94 S.Ct. 2925, 41 L.Ed.2d —— (1974). In this case, the rights plaintiff possesses and the injury asserted are coterminous with those of all the union members and consequently he has standing to sue both for himself and the class he seeks to represent.

The class action allegations of the complaint consist of the assertions that: plaintiff, as a member of Local 107, brings this action on behalf of himself and all other members similarly situated; the class numbers in the thousands so that joinder is impractical; there are questions of law or fact common to the class; and plaintiff will adequately represent the class. Plaintiff's motion merely repeats these allegations.

In Ford v. Metropolitan District Council of Phila., *supra*, the court denied class action certification. In that case, a total of 6196 votes were cast on the dues increase with 4427 for an in-

crease and 1769 against. The court stated that this indicated that the union was sharply divided on the question and relying on Giordano v. Radio Corporation of America, 183 F.2d 558 (3d Cir. 1950), denied class action certification. *Giordano* involved a suit by an officer of a labor union for himself and a number of other officers to prevent their expulsion. The action was brought as a class action—on behalf of all members of the local except for the defendants. The defendants were, inter alia, other officers of the union. The court held that the affidavits on record showed that the local was sharply divided on the very question of expulsion and a majority of voting members at a meeting had voted to sustain their explusion. On the basis of such sharp division, the court concluded that plaintiff could not adequately represent the whole membership. The court further stated that the class could not be defined as all the members except for those acting in concert with defendants for such a class would be too ill-defined and ephemeral.

■ First, we hold that a class action can be maintained for a violation of section 101 rights. Sertic v. Cuyahoga, Lake, Geauga & Ashtabula Cos., C.D.C., 423 F.2d 515 (6th Cir. 1970), appeal after remand, 459 F.2d 579 (6th Cir. 1972).

■ Second, we hold that this action may proceed under F.R.Civ.P. 23(b)(2) as a class action on behalf of all members of Local 107, except for the defendants herein, for purpose of the request for injunctive relief against collection of the dues increase only. Specifically for this purpose, we find that: the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims of the plaintiff are typical of the claims of the class; and the plaintiff will fairly and adequately protect the interests of the class.

There is no need to specifically discuss our findings as to the first three criteria under F.R.Civ.P. 23(a) above. The fairness and adequacy of representation requires some discussion. On the face of the present record, there is an allegation of the violation of the rights of all members of Local 107. The plaintiff, under the present allegations, has shown great tenacity in pressing this claim and we take notice that his counsel has experience in this regard. With respect to any possible conflict within the class, we will not presently assume that class members do not wish their rights vindicated. Whether or not dues should be increased for Local 107 is not the issue here so *Giordano* is inapposite to that extent insofar as possible conflict is indicated by the actual vote that has taken place.

At this time, we stay any decision as to whether the court should certify this action as a class action with respect to the return of monies to members collected pursuant to the dues increase. Plaintiff has not set out that part or parts of subsection (b) of Rule 23 under which he asserts this action is maintainable as a class action as required by L.R.Civ.P. 45(b). However, regardless of whether the remedy, noted above, is characterized as legal or equitable, it appears to the court, at this time, that such a class remedy may only be certified under F.R.Civ.P. 23(b)(3). Paddison v. The Fidelity Bank, 60 F.R.D. 695 (E.D.Pa. 1973). The allegations necessary for consideration under section (b)(3) of Rule 23, pursuant to L.R.Civ.P. 45, are wholly lacking here and their absence is not without significance. Katz v. Carte Blanche Corp., 496 F.2d 747, 18 F.R. Serv.2d 381 (3d Cir. 1974). Moreover, the appropriate remedial approach to the reimbursement claim is unclear. *See,* Sertic v. Cuyahoga, Lake. Geauga & Ashtabula Cos., C.D.C., *supra.*

Any injunctive order in this case will necessarily operate in favor of the entire local membership and so for this reason and the reasons set out above we have little difficulty with class action certification on the request for an injunction against further collection of the increased dues. Nevertheless, the reimbursement claim is more complex. The

parties have not addressed any of the problems inherent therein and we express no view upon them. Consideration of possible class action designation on reimbursement is stayed pending the outcome of the claim for injunctive relief.[4]

See also, D. C., 363 F.Supp. 338.

4. Defendants have also filed a motion for a more definite statement with respect to the complaint's class action allegations. Insofar as the 23(b)(2) certification is concerned, the allegations are adequate. Insofar, as plaintiff seeks certification on the reimbursement request, we will decide that issue at a more appropriate time and so we deny in part and reserve in part defendants' motion.