Eugene R. RISLER, individually and on behalf of others similarly situated, Plaintiff,

v.

AIR LINE EMPLOYEES ASSOCIATION, INTERNATIONAL, and the ALEA Republic Master Executive Council, Defendants.

Civ. No. 3–84–794.

United States District Court,
D. Minnesota,
Third Division.

Sept. 6, 1985.
On Motion to Enter Judgment
Oct. 22, 1985.

[redacted]

James C. O'Neill, St. Paul, Minn., for plaintiff Eugene R. Risler.

Russell Woody, Cotton, Watt, Jones & King, Chicago, Ill., David S. Anderson, Peterson, Bell & Converse, St. Paul, Minn., for defendant Air Line Employees.

Daryle L. Uphoff, Lindquist & Vennum, Minneapolis, Minn., for defendant ALEA Republic.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court on the Cross-Motions for Partial Summary Judgment of named plaintiff Eugene R. Risler, defendant Air Line Employees Association, International, and defendant ALEA Republic Master Executive Council. These Motions for Partial Summary Judgment were submitted with a Stipulation of Facts dated July 8, 1985 for purposes of resolving the issue of liability. No genuine issue of material fact exists with respect to liability and the matter is appropriate for summary judgment.

Plaintiff Eugene R. Risler (Risler) is an employee of Republic Airlines, Inc. (Republic) and a member in good standing of defendant Air Line Employees Association, International (ALEA).[1] ALEA is the duly certified and recognized exclusive collective bargaining representative of the approximately 6,126 clerical, office, fleet, and passenger service employees of Republic. ALEA is a "labor organization" within the meaning of § 3(i) and (j) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 402(i) and (j). Defendant ALEA Republic Master Executive Council (MEC) is an intermediate body in the organizational structure of ALEA consisting of all the Local Council Chairmen who represent ALEA members of the air carrier Republic in a specific geographic area.

Republic, like a number of other air carriers, experienced significant and continuing financial difficulties during the past several years. Losses skyrocketed, indebtedness ballooned, and shareholder equity plummeted. In the Summer of 1983, Republic advised ALEA and five other unions representing Republic employees[2] that its rapidly deteriorating financial condition jeopardized the continued existence of the airline. Republic further advised ALEA and the other unions that substantial concessions in the area of employee wages and benefits were required in order for Republic to survive. On August 31, 1983, ALEA, in accordance with the ratification vote of its affected members, entered into an agreement with Republic which amended the collective bargaining agreement between them to allow Republic requested concessions with respect to wages and benefits. The other unions representing Republic employees entered into similar concessionary agreements with Republic at about the same time.

In anticipation that Republic would need and seek further employee concessions, MEC, with the approval of ALEA, joined with the appropriate subordinate bodies of the other unions representing Republic employees to form the Coalition of Unions of Republic Employees (CURE) on November

1. The court draws these facts from the Stipulation of Facts dated July 8, 1985 and the pleadings which are of record in this case.

2. The other unions representing Republic employees included the Air Line Pilots Association, International, the Association of Flight Attendants, the International Association of Machinists, the American Airway Supervisors Association, and the Transport Workers Union.

4, 1983.[3] CURE was formed for the purpose of conducting joint discussions with Republic concerning the possible establishment of an employee stock ownership plan (ESOP) as part of the *quid pro quo* for anticipated further employee concessions. On January 11, 1983, MEC, pursuant to Article I, Section 7(b) of the ALEA Bylaws,[4] determined that a special assessment was necessary in order to defray the extraordinary expenses which MEC incurred in connection with CURE. MEC adopted a resolution to submit to a membership referendum a proposal for levying an assessment in an amount equal to 2.85% of one month base salary of each member to be paid at the option of the member in a single payment or in four equal installments on four consecutive paydays. The assessment referendum was the first such referendum ever to be submitted to ALEA membership in the history of the union.

On January 19, 1984, ALEA, in accordance with the procedure for contract ratification under Article II(g) of the ALEA Bylaws,[5] mailed to each of its members working for Republic a cover letter and ballot concerning the proposed assessment.[6] The deadline for returning marked ballots to ALEA headquarters was February 9, 1984. That deadline was extended by MEC resolution to February 23, 1984.

On February 10, 1984, MEC announced to its ALEA Republic members that a majority of the members had approved the assessment as of that date. On March 21, 1984, MEC informed ALEA Republic members by letter of the collection procedure for the assessment. Funds received in response to billings for the assessment were deposited in a special account designated "Republic Airlines Master Executive Council of ALEA." A total of 6246 members were billed for the assessment. As of June 13, 1984, only 3030 members had paid the assessment in full and, of the 3216 members who had not paid the full amount of the assessment, 2835 members had paid nothing at all.

On June 11, 1984, Risler, individually and on behalf of others similarly situated, commenced this lawsuit against ALEA alleging that the assessment was illegally levied upon ALEA members employed by Republic because the assessment referendum violated the secret ballot requirement of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii). Risler sought temporary, preliminary, and permanent injunctive relief, nullification of the assessment, restitution of amounts already paid, and other appropriate relief. Following a hearing on a temporary restraining order, Risler and

3. The other unions which joined with ALEA to form CURE included the Air Line Pilots Association, International, the Association of Flight Attendants, the American Airway Supervisors Association, and the Transport Workers Union.

4. Article I, Section 7(b) of the ALEA Bylaws provides that:
   If the Master Executive Council of a particular or individual carrier shall determine that an assessment for extraordinary expenses is necessary at such carrier, such assessment may be levied equally on all members employed by such carrier provided the Master Executive Council shall ballot its membership and a majority of all such members employed by such carrier vote approval of such assessment.

5. Article II(g) of the ALEA Bylaws provides that:
   In the course of direct negotiations or in mediation when a settlement is considered acceptable, such shall be submitted to the affected membership for its consideration. Ratification ballots shall be sent to all members who have a current address on file at Headquarters, and only the official ballot received from Headquarters may be used for voting. No photostats or handwritten ballots will be accepted. The affected membership shall be allowed no more than twenty-one (21) days from date of mailing to return their signed ballot by mail. All ballots received on or before the expiration of the 21-day period shall be tallied and a majority of those ballots returned shall determine acceptance or rejection of the contract. In the event of rejection of such settlement, the process of negotiations may be continued. In the event arbitration is accepted, the award is final and no further submission to ratification can be made. The decision to arbitrate is determined by the president of the association in consultation with the affected Master Executive Council and the Contract Administration Department.

6. The cover letter and ballot concerning the proposed ALEA assessment are attached in the Appendix to the Memorandum Order.

ALEA executed on June 15, 1984 a stipulation with respect to the requested temporary and preliminary injunctive relief. On June 21, 1984, Risler amended his complaint against ALEA to include MEC. MEC subsequently filed a third-party complaint against Republic on July 2, 1984 and a cross-claim against ALEA on July 23, 1984. The third-party complaint against Republic and the cross-claim against ALEA of MEC were ultimately dismissed without prejudice on July 16, 1985 pursuant to the parties' stipulation. Risler, ALEA, and MEC have now brought Cross-Motions for Partial Summary Judgment which the court heard on August 16, 1985.

The issue before the court for the purposes of summary judgment is whether the January 19, 1984 referendum ballot of ALEA Republic Master Executive Council requesting approval of an assessment violated § 101(a)(3)(B)(ii) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(3)(B)(ii).

Section 101(a)(3) of the Labor-Management Reporting Disclosure, 29 U.S.C. § 411(a)(3), provides with respect to dues, initiation fees, and assessments that:

> Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—
>
> (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
>
> (B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

29 U.S.C. § 411(a)(3).

A secret ballot within the meaning of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), is defined in LMRDA § 3(k), 29 U.S.C. § 402(k), to be

> the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed.

29 U.S.C. § 402(k).

In order for a labor organization to levy an assessment under LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), therefore, a *majority* of the members *voting* in a *membership referendum* conducted by *secret ballot,* which is the *expression* by ballot of a *choice* in such a manner that the person expressing the choice *cannot be identified* with the choice expressed, must approve the assessment.

ALEA, as a labor organization under LMRDA § 3(i) and (j), 29 U.S.C. § 402(i) and (j), is subject to the dues, initiation fees, and assessments provision of LMRDA § 101(a)(3)(B), 29 U.S.C. § 411(a)(3)(B). The ALEA Bylaws, Article I, Section 7(b), provide that an assessment may be levied if MEC has balloted its membership and a

majority of members vote approval of the assessment. Any ALEA assessment must therefore conform with LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), which provides that no assessment may be levied except "by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot." [7]

■ The court finds that the January 19, 1984 referendum ballot concerning the assessment on its face violated the secret ballot requirement for a membership referendum of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii). The referendum ballot concerning the assessment, which ALEA mailed to its Republic employee members on January 19, 1984, provided a "Yes" box and a "No" box by which members were to express their preference with respect to the assessment. The ballot also provided space in which the voting members were to give their names, signatures, classifications, domicile, date, and ALEA membership number. The ballot also mentioned the deadline date for the return of the ballot. The referendum ballot clearly required voting members to identify themselves and, consequently, their choices. The ballot did not allow for the expression of a choice with respect to the assessment which could be cast in such a manner that the person expressing the choice could not be identified with the choice expressed. The January 19, 1984 referendum ballot concerning the assessment violated the secret ballot requirement of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), and any assessment levied because of this referendum ballot cannot stand.

ALEA and MEC, however, argue that the referendum ballot was a secret ballot within the meaning of LMRDA § 3(k), 29 U.S.C. § 402(k), as used in LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), because it was not a ballot by which persons expressing a preference against the assessment could be identified with their choice. In support of this argument, ALEA and MEC look to Article I, Section 7(b) of the ALEA Bylaws which provides that, when an MEC determines that an assessment for extraordinary purposes is necessary at its carrier, an assessment may be levied provided that MEC "shall ballot its membership and a majority of all such members employed by such carrier vote approval of such assessment." Under the ALEA Bylaws, an assessment could be approved only if a majority of members employed by Republic, not a majority of those members voting, expressed approval of the assessment. ALEA and MEC argue that, under the ALEA Bylaws, the number of members voting against the assessment would be irrelevant to the outcome of the referendum. A member who opposed the assessment, according to ALEA and MEC, need not have expressed such a preference by casting a signed ballot. Rather, a member opposing the assessment could have contributed to the defeat of the assessment by not voting at all or submitting an unsigned ballot. ALEA and MEC believe that the cover letter accompanying the referendum ballot, which mentioned Article I, Section 7(b) of the ALEA Bylaws, clearly put members on notice that opposition to the assessment could be expressed by not voting or by casting an unsigned ballot. As such, members expressing a preference against the assessment could not be identi-

7. The court notes initially that an apparent conflict exists between Article I, Section 7(b) of the ALEA Bylaws and LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), in that the ALEA Bylaw provides that an assessment may be levied if a majority of members vote approval whereas the statute provides that an assessment may be levied if a majority of members voting vote approval. This apparent conflict is seen more readily in light of Article II(g) of the ALEA Bylaws, which provided the purported procedure by which ALEA sought membership approval of the assessment, in that it specifies that a majority of those ballots returned determines acceptance or rejection. The court, because it finds that the January 19, 1984 referendum ballot violated the statute for other reasons, need not decide whether this apparent conflict between Article I, Section 7(b) of the ALEA Bylaws and LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), is an actual conflict and, if so, whether such a conflict is a sufficient reason to find that the referendum ballot violated the statute.

fied with their choice and, ALEA and MEC conclude, the referendum ballot was therefore a secret ballot within the meaning of LMRDA § 3(k), 29 U.S.C. § 402(k), as used in LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii).

■ The court rejects this argument of ALEA and MEC as contrary to both the statute and commonsense. Section 101(a)(3)(B)(ii) of LMRDA, 29 U.S.C. § 411(a)(3)(B)(ii), requires that in order for a labor organization to levy an assessment, a majority of members voting in a membership referendum conducted by secret ballot, which is the expression by ballot of a choice in such a manner that the person expressing the choice cannot be identified with the choice expressed, must approve the assessment. The statute speaks in terms of "voting," "casting," "expressing," and "choosing" and clearly evidences an intent to encourage active, meaningful, and anonymous participation in membership referenda through the use of secret ballots. The statute necessarily contemplates members of labor organizations making known their preferences with respect to assessments through some affirmative and anonymous act. As ALEA and MEC describe the operation of Article I, Section 7(b) of the ALEA Bylaws with respect to assessments, however, it encourages, if not requires, members opposing the assessment to vote a signed ballot, to vote an unsigned ballot contrary to the direction of the ballot, or not to vote at all. The operation of Article I, Section 7(b) of the ALEA Bylaws is, therefore, contrary to the statute in that it discourages anonymous voting and the meaningful expression by ballot of a choice with respect to the assessment which is the subject of the referendum ballot.

The argument of ALEA and MEC is also contrary to commonsense. ALEA members who received the January 19, 1984 referendum ballot were being asked, according to the cover letter which accompanied the ballot, "to make the most important decision [that ALEA members] will ever be required to make for continued employment, and the future direction of

Republic Airlines." ALEA members were being asked to vote "yes" or "no" with respect to the special assessment intended to finance CURE and were given a deadline by which to return their ballots. ALEA members were given a ballot, a choice, and a deadline by which to return the ballot. To think that ALEA members who opposed the assessment would then realize that they could express their opposition and preserve their anonymity by not voting or voting an unsigned ballot, as ALEA and MEC argue, is almost too much to be believed. Commonsense dictates in this situation that when a ballot, a choice, and a deadline have been provided, one will use the ballot, make the choice, and return it before the deadline.

ALEA and MEC also argue that the referendum ballot was, at worst, only in technical violation of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), and was not intended, and did not operate, to coerce, intimidate, or prejudice ALEA members in the expression of their choices in connection with the assessment. Essentially, ALEA and MEC argue what they said they were not arguing—that Risler must make a showing of coercion, intimidation, or prejudice to challenge a membership referendum under LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii). Absent a showing of coercion, intimidation, or prejudice, according to ALEA and MEC, any violation of the secret ballot requirement is a technical violation which does not implicate the policies underlying the secret ballot requirement and should not be accorded the protection of the statute.

■ The court also rejects this argument of ALEA and MEC. The requirements which a labor organization must satisfy in order to levy an assessment are provided in the clear language of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii). That a showing of coercion, intimidation, or prejudice in connection with the membership referendum is necessary to establish a violation of the statute is nowhere mentioned and should not be read into the

statute. This statute is a remedial statute and should not be read so narrowly, as reading in a coercion, intimidation, or prejudice requirement would entail, as to derogate any of the rights which Congress has granted to American workers. *White v. King*, 319 F.Supp. 122, 124 (E.D.La.1970). Furthermore, the argument of ALEA and MEC which would essentially require Risler to show that

the result of the ballot was, in fact, affected by its nonsecret nature and would have been otherwise had a secret ballot been held is directly contrary to the congressional judgment represented by the secrecy provision.... Congress envisaged unanimity in the case of nonsecret ballots but also judged that such unanimity was suspect. Congress required that balloting take place absent even the subtle pressure that nonsecrecy, in itself, may entail. Once a nonsecret ballot has been held, if plaintiff must allege and prove the prejudicial impact of nonsecrecy, the very problem of even subtle pressure, which Congress sought to eliminate, would necessarily pervade such proceedings and consequently congressional judgment would be frustrated.

*Connor v. Highway Truck Drivers and Helpers, Local 107*, 378 F.Supp. 1069, 1074 (E.D.Pa.1974).

"The requirement of a secret ballot is an absolute protection for the [worker], and any vote that dispenses with it is invalid as repugnant to the statute." *White v. King*, 319 F.Supp. 122, 124–25 (E.D.La.1970).

The court finds that the January 19, 1984 referendum ballot concerning the assessment violated the secret ballot requirement for a membership referendum of LMRDA § 101(a)(3)(B)(ii), 29 U.S.C. § 411(a)(3)(B)(ii), and any assessment levied because of that referendum ballot cannot stand. The court, therefore, will grant the Motion for Partial Summary Judgment of Risler and deny the Motions for Partial Summary Judgment of ALEA and MEC.

Accordingly, IT IS ORDERED that:

1. The Motion for Partial Summary Judgment of plaintiff Eugene R. Risler is granted as to the issue of liability.

2. The Motion for Partial Summary Judgment of defendant Air Line Employees Association, International is denied.

3. The Motion for Partial Summary Judgment of defendant ALEA Republic Master Executive Council is denied.

APPENDIX

## Air Line Employees Association, International

5500 South Central Avenue, Chicago, Illinois 60638          Telephone (312) 767-3333

*Affiliated with Air Line Pilots Association, International, AFL-CIO*

January 19,1984

Dear ALEA Member,

Enclosed is a ballot for which you will be ask to make the most important decision you will ever be required to make for continued employment, and the future direction of Republic Airlines.

C.U.R.E. has retained the service of the best finance experts and consultants that money can buy on Wall Street & Washington D.C. to represent you for implementation of the ESOP plan proposed by C.U.R.E.

By now you should have received or at least seen the"white paper" (detailed analysis) of the Company's so-called three-year partnership plan. This white paper was prepared by Connerton & Bernstein a very highly respected law firm in Washington D.C. By request of C.U.R.E.

In order to finance the team of experts C.U.R.E. has retained to protect the membership's of the coalition and insure we receive fair equity for our investment on any future concessions, we must ask each member of the coalition to authorize an assessment of 2.85% of one months base salary. We will spread the payments out over four pay periods which would amount to aproximately $15.00 each pay period if you go at the top of scale in the higher pay classifications. All of the union members of the coalition are being assessed the same percent of 2.85% so the more your base rate, the higher your contribution. The pilots have already been assesd $200.00 and we are operating on their funds at this time.

THE HARD FACTS ARE AS FOLLOWS:

1- Vote YES for the assessment and invest approximately $60,00 to implement the C.U.R.E. ESOP plan to secure a united employee voice with a seat on the Board of Directors, and some equity for our concession investments.

2- Vote NO on the assessment and accept the Company's concession three year plan and continue to give & give with nothing in return except promises.

3- Both the Company and the consultants C.U.R.E. has retained are in complete agreement on one issue. IF NOTHING IS DONE, REPUBLIC AIRLINES WILL BE FORCED INTO LIQUIDATION IN 1984.

C.U.R.E. NEEDS YOUR SUPPORT AND FINANCIAL HELP TO INSURE WE HAVE A FUTURE AS EMPLOYEES OF REPUBLIC AIRLINES. I URGE YOU TO VOTE YES FOR THE ASSESSMENT

Sincerely,

Robert D. Haskin
Chairman ALEA-MEC & C.U.R.E.

The ALEA Master Executive Council at Republic Airlines, pursuant to Section 7(b) of Article I of the Bylaws, has determined that an assessment for extraordinary expenses is necessary at such carrier. Under this circumstance, the Bylaws provide for a ballot of the membership and equal levy of the assessment if a majority of all such members employed by Republic vote approval.

Section 9(a) of Article I provides for good standing in ALEA with all of the rights and privileges of membership when a member has paid in full "...initiation fees, dues and/or assessments."

Section 23(b), the union security provision of the collective bargaining agreement, provides for good standing in ALEA if a member "tenders the initiation fee and periodic dues and assessments."

The assessment here involved shall be 2.85% of one month of base salary for each member. It may be paid in full or in four equal installments on four consecutive pay periods.

---------------------------------------------------------------

BALLOT

   I. hereby approve the assessment referred to hereinabove.

           YES              /￣￣_/

           NO               /￣￣_/

Print Name:_____

Signature:_____

Classification:_____

Domicile:_____

Date:_____ALEA Membership No._____

Deadline date for return of this ballot: February 9, 1984.

## ON MOTION TO ENTER JUDGMENT

This matter is before the court on the Motion to Enter Judgment of plaintiff Eugene R. Risler (Risler). In a Memorandum and Order dated September 6, 1985, the court granted Risler's Motion for Partial Summary as to the issue of liability finding that the referendum ballot of January 19, 1984 concerning the assessment of defendants Air Line Employees Association, International (ALEA) and ALEA Republic Master Executive Council (MEC) violated the secret ballot requirement for a membership referendum of § 101(a)(3)(B)(ii) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(3)(B)(ii). The parties now inform the court that they agree on the essential terms of a remedy in this matter and, believing that no practicable alternative to Risler's proposed remedy exists, do not object to entry of judgment on those terms. Those terms of remedy, as represented to the court, provide that:

1. ALEA shall inform those members who have not yet paid the January 1984 assessment, which have been adjudicated to be null and void, that they have no obligation to pay and satisfy the assessment.

2. MEC, with respect to those members who have paid all or any part of the January 1984 assessment, shall refund the full amount of such members' previous payments without interest.

3. Any award of attorney's fees, costs, and expenses shall be made by the court through application to United States Magistrate Floyd E. Boline. [In an Order dated October 18, 1985, Magistrate Boline awarded Risler reasonable attorney's fees in the amount of $18,060.00, attorney's costs and disbursements in the amount of $213.94, and personal costs and disbursements in the amount of $542.04. ALEA and MEC have agreed to waive their right to appeal this Order.]

Based on the files and records in this action, and the memoranda of and correspondence and communication with counsel, IT IS ORDERED that:

1. Defendant Air Line Employees Association, International (ALEA) shall advise those members of ALEA who have not yet paid all or any part of the ALEA Republic Master Executive Council (MEC) January 1984 assessment of 2.85% of one month base salary that (a) the January 1984 assessment has been adjudicated to be null and void and (b) those members have no obligation to pay and satisfy the January 1984 assessment. The method by which ALEA so informs those members may be by either first class mail addressed to those members at their last known addresses or publication in an ALEA newsletter or other regular ALEA publication.

2. Those members of ALEA who have paid all or any portion of the MEC January 1984 assessment shall be entitled to a refund from MEC of the full amount of those members' previous payments without interest. Such refund shall be issued to those members within 45 days of the date of this Order and shall be mailed by first class mail to those members at their last known addresses.

3. Plaintiff Eugene R. Risler is awarded reasonable attorney's fees, costs, and expenses in the amount of $18,815.98.

LET JUDGMENT BE ENTERED ACCORDINGLY.